IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOEY L. WEDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-371-DES |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff JOEY L. WEDGE ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.     Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520(a)(4).  This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five.  *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).  If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).  The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence.  *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).  Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Noreja,* 952 F.3d at 1178 (quotation omitted).  Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

**II.     Claimant's Background and Procedural History**

In August 2020, Claimant applied for disability insurance benefits under Title II of the Act. (R. 13, 183-89). Claimant alleges he has been unable to work since August 18, 2018, due to a back injury, muscle spasms, bowel problems, and falling. (R. 15, 254). Claimant was 42 years old on the date of the ALJ's decision. (R. 27, 183). He has a tenth-grade education and past relevant work as a delivery driver, furniture cleaner, forklift operator, lawn care worker, and general construction worker. (R. 255, 39).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing. (R. 58-95, 113-14). ALJ Bill Jones conducted an administrative hearing and issued a decision on June 27, 2022, finding Claimant not disabled. (R. 13-27, 34-55). The Appeals Council denied review on October 26, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Claimant filed this appeal on December 19, 2022. (Docket No. 2).

**III.     The ALJ's Decision**

In his decision, the ALJ found Claimant met the insured requirements for Title II purposes through December 31, 2023. (R. 16). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date of August 18, 2018. (*Id.*). At step two, the ALJ found Claimant's adjustment disorder with anxious and depressed mood and degenerative disc disease were severe impairments, but that his suspected stroke/transient ischemic attack and obesity were non-severe. (*Id.*). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 16-19).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following non-exertional limitations:

> [T]he claimant can only occasionally stoop; and the claimant has the ability to understand, carry out, and remember simple instructions, make simple work-related decisions, attend and concentrate to periods of two hours as required in the workplace, respond appropriately to supervision, co-workers, and work situations, and deal appropriately with changes in a routine work setting, but [i]s unable to work effectively with the general public.

(R. 19).

At step four, the ALJ concluded that Claimant could not return to his past relevant work. (R. 25-26). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including table worker, optical assembler, and document preparer. (R. 26-27). Accordingly, the ALJ concluded Claimant was not disabled. (R. 27).

## IV.     Issues Presented

Claimant asserts the ALJ erred by failing to: (1) fully develop the record (Docket No. 9 at 12-13); (2) properly evaluate the consistency of his subjective allegations (*id.* at 9-11); (3) give proper deference to the medical record (*id.* at 11-12); and (4) present a hypothetical question to the VE that included all his limitations (*id*. at 13-14).[2]  The Court finds no error.

## V.     Analysis

### A.     ALJ Sufficiently Developed the Record

Claimant contends the ALJ failed to fully develop the record as to the limitations resulting from Claimant's stroke and/or TIA activity. Specifically, Claimant argues remand is required so

---

[2] The Court has re-organized Claimant's arguments for clarity.

4

that Claimant may undergo additional brain scans, testing, and perhaps sessions with a rehabilitative service program, to determine the true extent of his mental limitations. (Docket No. 9 at 13).

Although the burden to prove disability is on Claimant, a social security disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993)). The ALJ's duty is limited to fully and fairly developing the record as to material issues. *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation omitted).

Developing the record may involve ordering consultative examinations and testing. To establish the need for a consultative examination, a claimant must "in some fashion raise the issue sought to be developed, which on its face, must be substantial." *Id.* at 1167 (citations omitted). If a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimants counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.* If counsel does not request a consultative examination, courts "will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

Consultative examinations may be used to "secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" where there is "an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision . . . ." 20 C.F.R. § 404.1519a(b). Specific examples of instances where a consultative examination may be required, include:

> (1) The additional evidence needed is not contained in the records of . . . medical sources;
> (2) The evidence that may have been available from . . . treating or other medical sources

> cannot be obtained for reasons beyond [the claimant's] control . . .; (3) Highly technical or specialized medical evidence that [the ALJ] need[s] is not available from . . . treating or other medical sources; or (4) There is an indication of a change in [the claimant's] condition that is likely to affect [his] ability to work, but the current severity of [his] impairment is not established.

*Id.; see also Hawkins,* 113 F.3d at 1166 (stating that a consultative examination is often required if there is a direct conflict in the medical evidence or the medical evidence is inconclusive and may be necessary where additional testing is required to explain a diagnosis).

Contrary to Claimant's assertion, the ALJ was not required to further develop the record by obtaining brain scans, testing, or sessions with a rehabilitative service program because there was "no inconsistency or insufficiency" for additional imaging or testing to resolve. 20 C.F.R. § 404.1520b. The ALJ is not required to further develop the record where, as here, there is sufficient information for the ALJ to make a disability determination. *Cowan v. Astrue,* 552 F.3d 1182, 1187 (10th Cir. 2008).

The evidence of record regarding Claimant's brain and mental functioning includes a November 2020 CT scan of Claimant's head (R. 556), a November 2020 MRI of Claimant's brain (R. 556-57), a neurology consultation with Dr. Tonya Phillips on January 26, 2021 (R. 506-08), two June 2021 CT scans of Claimant's head (R. 812-14), a July 2021 CT scan of Claimant's head (R. 1255-56), a July 2021 MRI of Claimant's brain (R. 1234-35), a neurology consultation with physician assistant Timothy Booker on August 3, 2021 (R. 1273-81), Dr. Peter Ciali's February 2021 consultative mental status examination and cognitive test results (R. 510-14), the state agency psychologists' March 2021 and June 2021 mental RFC assessments (R. 70-72, 91-93), as well as numerous mental status and/or neurological examinations performed by various providers. (R. 352, 354, 356, 358, 360, 362, 364, 418, 465-66, 470, 526, 655, 657, 660, 683, 708, 1400, 1416). Notably, all of Claimant's imaging was normal except for the presence of sinusitis, and his mental

status and/or neurological examinations were consistently normal. Moreover, the ALJ found the state agency psychologists' opinions persuasive, and there is no medical source opinion regarding Claimant's mental impairments that identifies limitations greater than those included in the RFC assessment. Thus, Claimant points to no direct conflict in the medical evidence, inconclusive medical evidence, or additional tests needed to explain his diagnoses. *See Hawkins,* 113 F.3d at 1166. The ALJ had sufficient evidence to make a disability determination, and the need for additional testing is not clearly established in the record.

B. **ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms**

Claimant next contends the ALJ erred in evaluating his subjective symptoms. Claimant specifically asserts the ALJ did not offer a sufficient discussion or justification for discounting his symptoms. (Docket No. 9 at 9-11).

As part of the RFC determination, the ALJ is required to consider Claimant's subjective complaints, or symptoms.[3] 20 C.F.R. § 404.1529(a) & (d)(4). The Commissioner uses a two-step process to evaluate a claimant's symptoms.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. First, the medical signs or laboratory findings must establish a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p at *3. The ALJ then evaluates the intensity and persistence of the

---

[3] Symptoms are defined as a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 404.1502(i).

[4] The Tenth Circuit characterizes this analysis as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with this process, *Paulek v. Colvin,* 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. This analysis is now termed the "consistency" analysis. *Id.* In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill,* 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding SSR 16-3p consistent with the prior approach taken by the Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

claimant's symptoms and determines how such symptoms limit his ability to perform work-related activities. *Id.*

Factors the ALJ considers when evaluating a claimant's symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve the symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. *Id.* at 7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan,* 552 F.3d at 1190 (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because symptom consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis. The ALJ summarized Claimant's subjective symptoms and limitations in his decision. (R. 20-22). He specifically acknowledged Claimant's allegations that he experiences disabling back pain and muscle spasms; has difficulty standing or sitting for prolonged periods; has difficulty walking long distances; is unable to lift; requires assistance putting on his sock and shoes; experiences problems with his bowels; requires assistance bathing; and experiences falls. (R. 19-20). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms

were not entirely consistent with the medical evidence and other evidence in the record. *Id.* In reaching this conclusion, the ALJ discussed a number of inconsistencies between Claimant's subjective allegations and the evidence of record, including: (1) only one provider of several recommended surgical correction for Claimant's back, which he declined; (2) the September 2018 lumbar spine x-rays revealed mild degenerative disc disease at L4-L5 and L5-S1; (3) the October 2018 lumbar spine MRI revealed mild early degenerative disc disease and mild loss of disc height at L3-L4 and L4-L5, and to a lesser degree at L5-S1; (4) Dr. Michael Wolfe's January 2021 orthopedic consultation with normal findings apart from a single trigger point at L5-S1; (5) physician assistant Rachel Johnson's September 2021 neurosurgery consultation with normal findings apart from tenderness to palpation in Claimant's sacroiliac joint; and (6) Claimant's repeated reports to providers that his prescribed treatment was beneficial in improving his symptoms. (R. 20-22). The ALJ thus linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Cowan* and SSR 16-3p.

### C. ALJ Properly Considered the Medical Record

It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004). However, the ALJ is not required to discuss in detail every piece of evidence in the record. *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Without pointing to any evidence the ALJ overlooked, Claimant contends the ALJ should have given more weight and deference to Claimant's medical records. (Docket No. 9 at 11-12).

9

Claimant simply contends this same evidence supports his allegations, and in so doing, asks the Court to reweigh the evidence to his benefit, which is improper. *See Smith v. Colvin,* 821 F.3d 1264, 1266 (10th Cir. 2016) ("[I]n making [the substantial evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's.").

    **D.**    **ALJ's Hypothetical Question was Proper**

Finally, Claimant contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including the additional limitations he claims. (ECF No. 9 at 13-14). For the reasons set forth in Part V. above, the ALJ's RFC assessment was supported by substantial evidence and was therefore proper. Claimant's argument regarding the hypothetical question posed to the VE fails because it rests on alleged errors in the RFC assessment the Court has already rejected. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

**VI.**    **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 29th day of February, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE